# United States District Court
# District of Massachusetts

DONNA SOVIE,
    Plaintiff,

V.                        CIVIL ACTION NO. 2008-10346-RBC

TOWN OF NORTH ANDOVER,
NORTH ANDOVER SCHOOL
    COMMITTEE and
STEPHEN M. FORTADO,
    Defendants.

## *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 29)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On February 29, 2008, plaintiff Donna Sovie ("Sovie" or "plaintiff") filed the present action based on diversity jurisdiction. (# 1, ¶ 3) Sovie subsequently filed an amended complaint on March 6, 2008 (# 3), and the Defendants Town of North Andover, North Andover School Committee, and Stephen M. Fortado

1

("the defendants") filed their answer to the amended complaint on April 2, 2008. (# 8) On May 10, 2010, the defendants filed a Motion for Summary Judgment (# 29), along with a memorandum of law in support of the motion (# 30), a Statement of Undisputed Facts (# 31), exhibits (## 32-42), and the Affidavit of Gregor A. Pagnini. (# 43) On June 14, 2010, the plaintiff filed an Opposition to the Defendants' Motion for Summary Judgment (# 46)(later re-filed with leave as #56), along with a Response to Defendants' Statement of Undisputed Facts (# 47), the Affidavit of Stephanie L. Moon with exhibits (# 48), and the Affidavit of Donna Sovie with exhibits (# 50). On June 22, 2010, defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (# 54) On July 27, 2010, the defendants filed the Affidavits of Stephen Fortado (#58) and Daniel O'Connor (#59) with exhibits. This Court must now resolve the issues presented in the defendants' motion for summary judgment.[1]

## II. Factual Background

The undisputed facts are that on or about January 29, 2007, Sovie entered into an employment agreement with the Town of North Andover Public

---

[1] On October 28, 2009, upon consent from all parties involved, this case was reassigned to Magistrate Judge Collings for all purposes, including decisions of final judgment (# 23).

Schools. (# 47 ¶ 1)  Sovie was hired as a Payroll Coordinator for the period of January 29, 2007 through June 30, 2008, with the possibility of renewal upon completion of the contract. (# 47 ¶ 2)  In a section entitled "Dismissal, Demotion, or Suspension," the contract states: "The Superintendent may suspend, demote or dismiss the Coordinator in accordance with the applicable provisions of Massachusetts General Laws." (# 47 ¶ 3)  At the time of Sovie's employment, Dr. Daniel O'Connor ("O'Connor") - the individual who interviewed and hired Sovie - was the Interim Superintendent of Schools in North Andover and Sovie's sole and direct supervisor. (# 47 ¶¶ 4-5, 7-8) Soon after Sovie began her employment as Payroll Coordinator, O'Connor received several complaints regarding payroll issues. (# 47 ¶ 8)

On April 23, 2007, defendant Stephen Fortado ("Fortado") began working as the interim business administrator for the town's school system. (# 47 ¶ 11) Fortado states (and Sovie disputes) that in his first week as business administrator, Fortado received numerous complaints about Sovie's job performance. (# 47 ¶ 12)  Fortado states that he communicated these complaints to O'Connor; O'Connor then terminated Sovie's employment on April 30, 2007. (# 47 ¶¶ 15, 17)

Several weeks after Sovie was terminated, O'Connor requested that

certain employees, including Fortado, create an internal memorandum outlining the reasons for Sovie's termination. (# 47 ¶ 18, 20) Fortado prepared such a memorandum and sent it to O'Connor. (# 47 ¶ 20) Plaintiff brings this action, claiming breach of the employment contract by the town of North Andover and the North Andover School Committee due to the plaintiff's unlawful termination, and claims of defamation and intentional infliction of emotional distress against defendant Fortado based on the statements made in an internal memorandum to O'Connor. (# 3)

### III. Discussion

#### A. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations and citation omitted). When considering a motion for summary judgment, the Court must determine whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)(citation omitted). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006)(citation omitted). Thus, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)).

### B. The Claims

#### 1. Count One - Breach of Contract against Defendants Town of North Andover and North Andover School Committee.

The defendants argue that summary judgment should be granted on Count I for breach of contract because the plaintiff was an employee at-will, and therefore could be terminated with or without reason. (# 30 at 4) Conversely, the plaintiff argues that her termination required "just cause" because the contract was for a definite time period. (# 56 at 5) It is clear that the contract was for a definite term—from January 29, 2007 to June 30, 2008—which, under Massachusetts law, creates a "just cause" requirement for termination. *Goldhor v. Hampshire College*, 25 Mass. App. Ct. 716, 722, 521 N.E.2d 1381, 1385 (1988) ("[A]n employee with a contract for a term certain may only be terminated prior to the expiration of that term for justifiable cause."); *see also Lemire v. Silva*, 104 F. Supp.2d 80, 95 (D. Mass. 2000). However, the contract must be viewed as a whole in order to determine whether Sovie's termination

required "just cause." *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 795, 494 N.E.2d 374, 378 (1986) ("A contract is to be construed to give reasonable effect to each of its provisions. '[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument . . .'") (quoting *Charles I. Hosmer, Inc. v. Commonwealth*, 302 Mass. 495, 501, 19 N.E.2d 800, 804 (1939)(internal citations omitted) (alteration in original)).

The Court must also consider the contract provision under "Dismissal, Demotion, or Suspension" which states that "[t]he Superintendent may suspend, demote or dismiss the Coordinator in accordance with the applicable provisions of Massachusetts General Laws." (# 48, exh. 1) The applicable law is Mass. Gen. Laws ch. 71 § 42, which states that "subject to the provisions of this section, the superintendent may dismiss any employee of the school district." Mass. Gen. Laws ch. 71 § 42. The section, in reference to non-teaching employees, does not mention either "at-will" or "for-cause." *Id*. The remainder of the section deals specifically with teachers, which is not applicable here, because the plaintiff was a non-teaching employee.

The Court finds that, after considering the contract as a whole, the plaintiff's termination required "just cause." The statute in question does not state that dismissal of a non-teaching employee requires "just cause" nor does it state that employment is at-will. It simply states that the superintendent has the authority to dismiss employees. This broad language leaves room for employment contracts to contain additional requirements before the superintendent can dismiss an employee, without violating the statute. As a result, the inclusion of a specific period of time in the plaintiff's contract overcame any at-will presumption and imposed the "just-cause" requirement embodied in the common law. The reference to Massachusetts General Laws does not affect this conclusion.[2]

Having found that the plaintiff's termination required "just cause" under the employment contract, the Court must determine whether the defendants are entitled to summary judgment applying this standard. Although the plaintiff

---

[2] In their reply to the plaintiff's opposition, the defendants point to a section of the personnel policy that the plaintiff attached as an exhibit. (# 48, exh. 2) Although this section of the policy certainly suggests the employment was at-will, the defendants offer no evidence that this policy was a binding part of the contract, and therefore, it should not be considered when interpreting the terms of the contract. *See O'Brien v. New England Tel. & Tel. Co.*, 422 Mass. 686, 691-692, 664 N.E.2d 843, 847-848 (1996) (discussing the types of evidence that would establish that a personnel manual is part of an employment contract). Furthermore, because the Court finds that there is no ambiguity in the contract, only the four corners of the contract should be considered. *See Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 706, 592 N.E.2d 1289, 1292 (1992)("It is also elementary that an unambiguous agreement must be enforced according to its terms.").

argues otherwise, it is clear that the standard set out in *Klein v. President and Fellows of Harvard College*, 25 Mass. App. Ct. 204, 208, 517 N.E.2d 167, 169 (1987), is the applicable and controlling standard for "just cause" under Massachusetts law.  See *Joyal v. Hasbro, Inc.*, 380 F.3d 14, 21 (1st Cir. 2004), *cert. denied,* 543 U.S. 1150 (2005);  *Hammond v. T.J. Litle & Company, Inc.*, 82 F.3d 1166, 1174-75 (1st Cir. 1996); *Boothby v. Texon, Inc.*, 414 Mass. 468, 480, 608 N.E.2d 1028, 1036 (1993)*; Ferry v. Rosewood Construction Corp.*, No. 02-1206C, 2008 WL 5216259, at *6 (Mass. Super. Ct. Nov. 5, 2008); 45 *Massachusetts Practice:  Employment Law* § 2.4 (2003)  ("Massachusetts courts have given a common construction to the words 'just cause' whether they are expressed in the contract or arise by implication.") (collecting cases).  The court in *Klein* states that:

> Terms such as 'just cause' and like phrases have been construed in similar or analogous contexts as meaning: '[T]here existed (1) a reasonable basis for employer dissatisfaction with a new employee, entertained in good faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business. Discharge for a 'just cause' is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith.

*Klein,* 25 Mass. App. Ct. at 208, 517 N.E.2d at 169-170 (quoting *G & M Employment Services, Inc. v. Commonwealth,* 358 Mass. 430, 435, 265 N.E.2d 476, 480 (1970)); see *Joyal,* 380 F.3d at 21 (stating that *G&M* is governing precedent and has yet to be disapproved).

The Court finds that there is sufficient evidence to present to a jury on the question of Sovie's satisfactory performance. *See Goldhor,* 25 Mass. App. Ct. at 722, 521 N.E.2d at 1385 ("As the existence of just cause is an affirmative defense, 'commonly a question of fact, it rarely can be ruled as a matter of law that it has been sustained.'") (quoting *Chaplain v. Dugas,* 323 Mass. 91, 93, 80 N.E.2d 9, 11 (1948)). There are facts set forth that would suggest that the defendants had just cause under *Klein,* such as the fact that numerous complaints were made regarding payroll problems. (# 47 ¶ 8) However, there are also facts set forth that could lead a jury to conclude that there was no just cause for the plaintiff's termination. Specifically, the plaintiff disputes that she had a negative attitude, lacked veracity, or was the cause of various payroll issues. (# 47 ¶¶ 8, 13, 16) She disputes that the complaints were directly related to her job performance. (# 47 ¶ 8) She also denies that O'Connor sat down with her to discuss his concerns about her performance and attitude (#

47 ¶ 8) and denies that he brought in someone who helped her with her duties. (# 47 ¶ 10) She argues that O'Connor failed to take any investigatory measures to determine the cause of the payroll problems. (# 47 ¶ 15) The Court finds that considering all the evidence, there is a factual question for the jury to decide whether the defendants had just cause to terminate the plaintiff under *Klein*.

### 2. Counts Two and Three—Defamation and Intentional Infliction of Emotional Distress against Defendant Fortado.

Plaintiff's defamation claim alleges that Fortado "published false statements about [plaintiff's] job performance in a memorandum to [O'Connor] that was explicitly intended to cause harm to [the plaintiff's] reputation and to her ability to continue to earn a living and also to cause her emotional injury." (# 56 at 13)   It is undisputed that Fortado began work as business administrator for the school district on Monday, April 23, 2007, and that Sovie was fired the following Monday. The memorandum at issue, dated June 7, 2007, states "Per your request, the following items/issues caused me to recommend termination of Donna Sovoie [sic] as Payroll Coordinator." (#58, exh. A at 1) The memorandum then details fifteen specific instances of payroll problems, some attributed specifically to Sovie.

11

Under Massachusetts law, "[d]efamation is the intentional or reckless publication, without privilege to do so, of a false statement of fact which causes damage to the plaintiff's reputation." *Elicier v. Toys "R" Us, Inc.*, 130 F. Supp.2d 307, 310 (D. Mass. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7, 10 (1991)). Massachusetts law provides that, "[a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *Bratt v. International Business Machines Corp.*, 392 Mass. 508, 509, 467 N.E.2d 126, 129 (1984). The "conditional privilege is a natural corollary of the privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." *Foley v. Polaroid Corp.*, 400 Mass. 82, 95, 508 N.E.2d 72, 79 (1987) (internal quotation marks and citation omitted). Fortado argues that the statements contained in the memorandum enjoy a conditional privilege, and the Court finds this argument dispositive of the defamation claim.

Because the memorandum was made in connection with Sovie's termination, it easily qualifies as a publication that furthers a legitimate business

interest.  *See, e.g., Thomas v. Sears, Roebuck & Co.*, 144 F.3d 31, 34 (1st Cir. 1998) (noting that "internal business communications are protected by a conditional business privilege" under Massachusetts law); *Paren v. Craigie*, No. 04-30127-KPN, 2006 WL 1766483, at *14 (D. Mass. June 16, 2006) (noting that "courts applying Massachusetts law have routinely rejected claims of defamation based upon internal business communications"); *Cornwell v. Dairy Farmers of America, Inc.*, 369 F. Supp.2d 87, 111 (D. Mass. 2005) ("Even if the information turns out not to be true it would not negate the privilege, since the statements were related to the employer's legitimate interest in the fitness of an employee to perform his or her job.") (internal quotation marks and citation omitted); *Elicier*, 130 F. Supp.2d at 311-12 (conditional privilege applies to alleged defamatory statement about employee's performance made during private meeting to those who shared a "direct interest in monitoring the plaintiff's performance").

Sovie counters that the memorandum did not further the school district's "legitimate" business interests:  she posits that "Fortado sought to cover up the breach of [the plaintiff's] employment contract by falsely attributing payroll problems to her."  (#56 at 16)  This argument, however, goes to whether the

defendant has abused the privilege, and not to whether the privilege applies - on its face, the privilege applies to the type of statements contained in the memorandum.

Because Fortado enjoyed a conditional privilege in this case, the plaintiff bears the burden on summary judgment to show, by "clear and convincing evidence," that the defendant abused the privilege. *Catrone v. Thoroughbred Racing Associations of North America, Inc.*, 929 F.2d 881, 889 (1st Cir. 1991) (internal quotation marks and citation omitted)  "The conditional privilege can be lost through either 'unnecessary, unreasonable or excessive publication of the defamatory matter' or by publication of defamatory information with 'actual malice.'" *Elicier*, 130 F. Supp.2d at 311 (citing *Catrone*, 929 F.2d at 889). Massachusetts law is clear that "recklessness, at least, should be required" to defeat the privilege. *Bratt*, 392 Mass. at 515, 467 N.E.2d at 132. Thus, "'[t]he conditional privilege is lost if the defendant (1) knew the information was false, (2) had no reason to believe it to be true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively.'" *Cornwell*, 369 F. Supp.2d at 111-112 (quoting *Sklar v. Beth Israel Deaconess Medical Center*, 59 Mass. App. Ct. 550, 558, 797 N.E.2d 381, 388 (2003)).

First, Sovie appears to argue that a jury could conclude that Fortado acted out of malice in writing the memorandum. She bases this assertion on the timing of the memorandum, positing that because the memorandum was written after the discharge and after Sovie had filed a notice of claim, a jury could find Fortado intended to "cover-up" the district's breach of contract. (# 56 at 16-18) Under Massachusetts law, malice exists "when the 'defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive.'" *Dragonas v. School Committee of Melrose*, 64 Mass. App. Ct. 429, 438, 883 N.E.2d 679, 687 (quoting *Dexter's Hearthside Restaurant, Inc. v. Whitehall Co.*, 24 Mass. App. Ct. 217, 223, 508 N.E.2d 113, 117, *rev. denied*, 400 Mass. 1104 (1987)), *rev. denied*, 445 Mass. 1105 (2005). Other than the timing of the memorandum, Sovie points to no other evidence, beyond mere speculation or theory, to suggest that Fortado had an ulterior motive in writing the memorandum. In fact, Sovie does not deny that there were payroll issues prior to her termination, and it is uncontested that Fortado reported complaints to O'Connor before Sovie's termination. Therefore, these issues and complaints did not appear for the first time after the plaintiff's termination. Nothing in this record bespeaks the "actual

malice" needed to overcome the conditional privilege. *Cf. Catrone*, 929 F.2d at 890 (rejecting similar "pretense" argument).

Next, Sovie contends that Fortado "recklessly published" the memorandum because Fortado did not conduct an independent investigation of the facts. Instead, Sovie argues, Fortado relied only on the reports of others without verifying the truth of the complaints or determining whether Sovie was responsible for the problems. (# 56 at 18-19)   These allegations, however, do not establish the requisite recklessness. To establish "reckless publication," Sovie must adduce evidence that Fortado made the statements "with knowledge of [their] falsity or with reckless disregard for the truth." *Foley,* 400 Mass. at 95, 508 N.E.2d at 79-80.   Reckless disregard of the truth only exists "'when there is a 'high degree of awareness of probable falsity or serious doubt as to the truth of the statement.'" *Judd v. McCormack,* 27 Mass. App. Ct. 167, 176, 535 N.E.2d 1284, 1289 (1989) (quoting *Restatement (Second) of Torts* § 600 cmt. b (1977)). The record wholly lacks evidence of this level.

First, there is no evidence whatsoever that Fortado knew (or thought) that any of the statements contained in the memorandum were false. Although Sovie disputes the accuracy of the statements by providing an alternative explanation

for the various payroll problems cited in the memorandum, "the conditional privilege stands even if some of the statements turn out to be false." *Coholan v. Eastern Lumber Co., Inc.*, 61 Mass. App. Ct. 1116, 810 N.E.2d 1290, 2004 WL 1497609, at *2 (July 6, 2004) (Table); *Dexter's Hearthside Restaurant, Inc.*, 24 Mass. App. Ct. at 222, 508 N.E.2d at 117 (privilege permits an employer "to disclose information which may turn out not to be true concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job"); *Fowler v. Sohio Oil Co.*, No. 88-2533-WD, 1990 WL 320042, at *4 (D. Mass. Jan. 9, 1990) ("In the absence of proof of malice, recklessness or ill will, the defense of privilege will prevail even if the remark was in fact false . . . .") (internal quotation marks and citation omitted).

Nor has Sovie adduced sufficient proof that Fortado's belief "was not reasonably grounded" or that he "lacked a reasonable basis" for his statements. *Foley*, 400 Mass. at 95-96, 508 N.E.2d at 80. As noted, that Sovie can offer alternative explanations for each of the complaints is not sufficient evidence that Fortado had no reason to believe that the complaints were true. Even if Fortado had little actual knowledge of Sovie's work abilities and made no inquiry of the

complaining employees or of Sovie herself before writing the memorandum (as Sovie contends), this is not sufficient to show that Fortado had no reason to believe the statements to be true. *Judd,* 27 Mass. App. Ct. at 175-76, 535 N.E.2d at 1289. Fortado wrote the memorandum based on information provided to him by other employees and he was entitled to rely on such information as a summary of what the employees had observed or experienced. *Id.; see also Cornwell*, 369 F. Supp.2d at 112 (summary judgment appropriate where "[t]here is no evidence that [defendant] intentionally made up the allegations or did not actually believe what she saw or heard, or what she was told") (citing *Foley*, 400 Mass. at 95-96, 508 N.E.2d at 79-80). The most a jury could find on this record is a negligent failure to investigate all the facts; but "[s]imple negligence, want of sound judgment, or hasty action will not cause loss of the privilege." *Dexter's Hearthside Restaurant, Inc.*, 24 Mass. App. Ct. at 223, 508 N.E.2d at 117; *Elicier*, 130 F. Supp.2d at 311 ("imposing a duty of affirmative verification is not consistent with the conditional privilege") (internal quotation marks, alteration and citation omitted).

It is unnecessary to determine whether the statements in the memorandum were defamatory or whether the other elements of the defamation claim were

met. Because the burden of proof was on the plaintiff to show that Fortado abused his conditional privilege, and the evidence does not warrant such a finding, Fortado is entitled to summary judgment on the defamation claim, as well as the associated intentional emotional distress claim arising from the alleged defamation.

### IV. Order

For the reasons stated above, it is hereby ORDERED that the defendants' motion for summary judgment (# 29) be, and the same hereby is, ALLOWED as to Counts Two and Three of the plaintiff's amended complaint (# 3) and otherwise DENIED.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

October 7, 2010.